## MINNESOTA *v.* NORTHERN SECURITIES COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 433.   Argued January 7, 8, 1904.—Decided April 11, 1904.

Consent of parties can never confer jurisdiction upon a Federal court. If the record does not affirmatively show jurisdiction in the Circuit Court, this court must, upon its own motion, so declare, and make such order as will prevent the Circuit Court from exercising an authority not conferred upon it by statute.

A State is not a citizen within the meaning of the provisions of the Constitution or acts of Congress regulating the jurisdiction of the Federal courts.

Under existing statutes regulating the jurisdiction of the courts of the United States, a case cannot be removed from a state court, as one arising under the Constitution or laws of the United States, unless the plaintiff's complaint, bill or declaration shows it to be a case of that character.

While an allegation in a complaint filed in a Circuit Court of the United States may confer jurisdiction to determine whether the case is of the class of which the court may properly take cognizance for purposes of a final decree on the merits, if, notwithstanding such allegation, the court finds, at any time, that the case does not really and substantially involve a dispute or controversy within its jurisdiction then, by the express command of the act of 1875, its duty is to proceed no further. And if the suit, as disclosed by the complaint could not have been brought by plaintiff originally in the Circuit Court, then, under the act of 1887–1888 it should not have been removed from the state court and should be remanded.

The intention of the Anti-Trust Act of July 2, 1890, 26 Stat. 209, was to limit direct proceedings in equity to prevent and restrain such violations of the Anti-Trust Act as cause injury to the general public, or to all alike, merely from the suppression of competition in trade and commerce among the several States and with foreign nations, to those instituted in the name of the United States, under § 4 of the act, by District Attorneys of the United States, acting under the direction of the Attorney General; thus securing the enforcement of the act, so far as such direct proceedings in equity are concerned, according to some uniform plan, operative throughout the entire country.

A State cannot maintain an action in equity to restrain a corporation from violating the provisions of the act of July 2, 1890, on the ground that such violations by decreasing competition would depreciate the value of its public lands and enhance the cost of maintaining its public institutions, the damages resulting from such violations being remote and indirect and not such direct actual injury as is provided for in § 7 of the act.

Article IV of the Constitution of the United States only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a State, other than that in which the court is sitting. It has nothing to do with the conduct of individuals or corporations.

THE facts are stated in the opinion of the court.

*Mr. W. B. Douglas,* Attorney General of the State of Minnesota, and *Mr. M. D. Munn,* with whom *Mr. George P. Wilson* was on the brief, for appellant:

As to removal to and jurisdiction of the Circuit Court:

The action was removed on the joint petition of all the defendants, on the ground that it arose under the Constitution and laws of the United States, and that the right upon which it was based and on which a recovery by plaintiff depended, would be defeated by one construction of the Constitution or said laws, and sustained by an opposite construction. Diverse citizenship did not form a basis for such removal, *Postal Telegraph Cable Co.* v. *Alabama,* 155 U. S. 482, and could not rightfully be presented as a ground therefor.

As to the doing of business by the Northern Securities Company within Minnesota and attempt to vacate service of summons, see *Goldey* v. *Morning News Co.,* 156 U. S. 518; *Wabash Western Railway* v. *Brow,* 164 U. S. 271.

The Circuit Court has jurisdiction of all civil actions in part arising under or depending upon the construction of the Constitution, laws or treaties of the United States. 24 Stat. 552; 25 Stat. 433; *Postal Tel. Cable Co.* v. *Alabama,* 155 U. S. 482; *Ames* v. *Kansas,* 111 U. S. 462; *Gold-Washing and Water Co.* v. *Keyes,* 96 U. S. 203; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 507; *Cummings* v. *Chicago,* 188 U. S. 410.

Read in the light of section 5 of the Court of Appeals Act—chap. 517 of the laws of 1891—it is equally clear that jurisdiction is assumed to exist in the Circuit Courts and an appeal authorized "in any case that involves the construction or application of the Constitution of the United States."

The Supreme Court of the United States is without original jurisdiction of this controversy. *Minnesota* v. *Northern Securities Co.*, 184 U. S. 199.

Assuming the facts to be as stated in the affidavit of the president of the Securities Company, above referred to, to the effect that the Securities Company is not the owner of any property situated in Minnesota and never transacted any business therein, the courts of Minnesota cannot acquire jurisdiction to hear and determine the issues involved herein, a jurisdiction over the person of the Securities Company cannot be obtained. *Pennoyer* v. *Neff*, 95 U. S. 714; *St. Clair* v. *Cox*, 106 U. S. 350; *Goldey* v. *Morning News Co.*, 156 U. S. 518; *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100; *Cabanne* v. *Graf*, 87 Minnesota, 510; *Conley* v. *Matheson Alkely Works*, 190 U. S. 406.

The Northern Pacific and Great Northern Railway companies are necessary parties with the Securities Company, and being residents of different States and not engaged in doing business in any single State, jurisdiction of the person of all the defendants cannot be obtained elsewhere than in this court, in which the Securities Company has voluntarily appeared. *Minnesota* v. *Northern Securities Company, supra.*

Under *California* v. *Southern Pacific Ry. Co.*, 157 U. S. 270, and *Minnesota* v. *Northern Securities Co.*, unless a Federal question is deemed to exist in this record which gives to the Circuit Court jurisdiction over the subject matter of the action, under our dual form of government, a State will be deprived of the right to invoke the jurisdiction of any court in the land for the purpose of enforcing its laws or protecting its proprietary interests from unlawful acts done in violation of the laws of the State or Nation.

Two Federal questions are clearly set forth in appellant's bill of complaint. Whether the State to protect its proprietary interests had a cause of action against the defendants arising in part under the Federal Anti-Trust Act; and whether the state Anti-Consolidation and Anti-Trust Acts (rightly con-

strued) had been violated. This presents a controversy be-
tween the appellant and the defendants, the correct determi-
nation of which involves or depends upon the construction
and the application of the commerce clause as well as Arti-
cle IV of the Constitution of the United States.

An issue was tendered in which the appellant alleged the
commission of certain acts by the defendants which were
specifically asserted to be not only seriously injurious to its
proprietary interest, but in violation of the Federal Anti-
Trust Act, and the learned trial court in its decision actually
construed the act adversely to one contention of appellant and
this construction rendered it unnecessary for the court to
construe the act with reference to the other questions sub-
mitted. In this portion of the decree the court construed the
act as excluding the appellant from invoking equity jurisdic-
tion for its enforcement. Again, upon the argument in this
court appellant's contentions upon both propositions were
strenuously opposed by counsel for appellees.

It is therefore submitted that the pending controversy is one
in part "arising under and depending upon the construction
of the laws of the United States." Cases cited *supra*, and
*Cummings* v. *Chicago*, 188 U. S. 410; *Defiance Water Co.* v.
*Defiance*, 191 U. S. 184; *N. P. Railway Co.* v. *Townsend*, 190
U. S. 270.

The test as to jurisdiction of the Circuit Court is clearly
stated in the opinion of the court in *Gold-Washing & Water
Co.* v. *Keyes, supra,* and affirmed in the case of *Shoshone
Mining Co.* v. *Rutter, supra,* see p. 507; *Railroad Company* v.
*Mississippi*, 102 U. S. 141; *Chapman* v. *Goodnow*, 123 U. S.
540; *Kaukauna Co.* v. *Green Bay & Canal Co.*, 142 U. S. 254,
and cases cited; *O'Neil* v. *Vermont*, 144 U. S. 323.

If this construction of the act of Congress obtains in the
application of the rule invoked, it is clear from the record that
the State has suffered, and will continue from year to year to
suffer, damages to its proprietary interests which will be
difficult, if not impossible, to measure, running into mil-

lions of dollars. *Parker.* v. *W. L. C. & W. Co.*, 2 Black, 551, and cases cited; *Clark* v. *Smith*, 13 How. 194; *Pennsylvania* v. *Wheeling Bridge.Co.*, 13 How. 518.

Upon the proposition that a State may sue to redress injuries which are strictly analogous to those suffered by private individuals, see *United States* v. *San Jacinto Tin Co.*, 125 U. S. 273; *United States* v. *Am. Bell Tel. Co.*, 128 U. S. 315, 317; *Missouri* v. *Illinois*, 180 U. S. 240; *Kansas* v. *Colorado*, 185 U. S. 125.

The violation of the Minnesota Anti-Consolidation and Anti-Trust Act, rightfully construed, involves, as applied to this controversy, the construction and the application of Article IV of the Federal Constitution, as well as the commerce clause. For history of the clause, see Elliott's Debates, vol. 4, 123, vol. 5, 487, 504.

The gravamen of the charge in appellant's complaint is that the defendants created a corporate device in New Jersey and used it for the purpose and with the result that property rights in Minnesota were affected, in violation of its laws. Our contention is that Article IV must be so construed as to make the constitutional enactments of Minnesota effective throughout the United States, so far as they apply to and affect property rights within the State. Otherwise the policy and laws of any State may be easily evaded.

The test of jurisdiction must necessarily be determined by a correct answer to the question: What issues were fairly tendered for determination by the bill of complaint? If this be not the test, the trial court, by misconstruing a statute, has the power to eliminate from the record a jurisdictional question and deprive a party of the right of appeal.

The question of whether or not the case was properly removed from the state to the Federal court, is in itself a Federal question. *Railroad Company* v. *Koontz*, 104 U. S. 15. The determination of this question in itself gives the right of appeal to this court direct.

The case having been appealed to this court, and this court,

on its own motion, having questioned the correctness of the removal from the state to the Federal court, that establishes the jurisdiction of this court on appeal over the entire case should this court determine that the case was properly removed from the state to the Federal court. *Oakley* v. *Goodnow*, 118 U. S. 44; *Scott* v. *Goodnow*, 165 U. S. 58; *Carter* v. *Texas*, 177 U. S. 442.

*Mr. John G. Johnson*, and *Mr. George B. Young*, with whom *Mr. M. D. Grover* and *Mr. C. W. Bunn* were on the brief, for appellees:

On the question of removal to and jurisdiction of the Circuit Court:

The cause was properly removed to the Circuit Court, and upon such removal that court acquired jurisdiction of it as a "suit arising under the Constitution and laws of the United States."

As to the test of such a suit as determined by Chief Justice Marshall, see *Osborn* v. *Bank*, 9 Wheat. 738, 822, in which it was held that a cause may depend upon several questions of fact and law. Some of these may depend on the construction of a law of the United States, others on principles unconnected with that law. If it be a sufficient foundation for jurisdiction that the title or right set up by the party may be defeated by one construction of the Constitution or laws of the United States and sustained by the opposite construction provided the facts necessary to support the action be made out, then all the other questions must be decided as incidental to this which gives that jurisdiction. Under this construction, the judicial power of the United States extends effectively and beneficially to that most important class of cases which depends on the character of the cause. See also *Cohens* v. *Virginia*, 6 Wheat. 264, 379.

The following cases were decided under the act of 1875: *Gold-Washing Co.* v. *Keyes*, 96 U. S. 199, 201; *Tennessee* v. *Davis*, 100 U. S. 257, 264; *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 140; *Ames* v. *Kansas*, 111 U. S. 449, 462; *Kansas*

*Pacific* v. *Atchison R. R.*, 112 U. S. 414; *Pacific Railroad Removal Cases*, 115 U. S. 1; *Starin* v. *New York*, 115 U. S. 2, 257; *Southern Pacific R. Co.* v. *California*, 118 U. S. 109, 112, *Metcalf* v. *Watertown*, 128 U. S. 586; *Shreveport* v. *Cole*, 129 U. S. 36, 41; *Beck* v. *Perkins*, 139 U. S. 628. In the act of 1887–8, Congress used the same terms as in the act of 1875, in the same sense and reënacted them as thus construed.

And this court has never intimated that the criterion declared by Chief Justice Marshall and adopted and applied by itself in so many cases was erroneous in itself or had been rendered inapplicable to any class of cases by the amending act of 1887–8. The following cases originated after the latter act: *Cooke* v. *Avery*, 147 U. S. 375, 384; *Colorado Central Mining Co.* v. *Turck*, 150 U. S. 138, 143; *Blackburn* v. *Portland Gold Mining Co.*, 175 U. S. 571, 580; *Patton* v. *Brady*, 184 U. S. 608, 611; *Swafford* v. *Templeton*, 185 U. S. 487, 494; *Northern Pacific Ry. Co.* v. *Soderberg*, 188 U. S. 526.

As it is the proper function of the plaintiff's pleading to state his own case and not that of the defendant, to give jurisdiction the Federal question must appear in plaintiff's statement of his own case, or of his own claim, and that is all that is required.

In a few cases there are expressions—inadvertent, no doubt —to the effect that the plaintiff's declaration must show that he asserts a right under the Constitution or some law of the United States,—as if only such suits were suits arising under the United States Constitution or laws. But this is directly opposed to the cases already cited and others that will be cited.

If such a requirement were essential to jurisdiction, one whose property was wrongfully seized by a United States marshal or revenue collector, or whose property was taken or his person or property injured by a Federal railway corporation, could have no redress in the Federal courts. His right of property or of personal security is not derived from the United States Constitution or laws, and when he asserts either

in a declaration he is not asserting a right under the United States Constitution or laws.

For trespass against a marshal, see *Bock* v. *Perkins,* 139 U. S. 628; *Sonnentheil* v. *Brewing Co.,* 172 U. S. 401. And compare *Walker* v. *Collins,* 167 U. S. 57. Against an internal revenue collector, see *Venable* v. *Richards,* 105 U. S. 636; *Harding* v. *Woodcock,* 137 U. S. 43.

The bill presents Federal questions both in its aspect of a bill by the State as a sovereign to enforce its local statutes, and as a landowner and shipper for relief under those statutes. And these questions are the same whether the State sues as sovereign or as property owner and shipper or in both of these capacities.

For cases analogous to the one at bar, see *South Carolina* v. *Coosaw Mining Co.,* 45 Fed. Rep. 804; 47 Fed. Rep. 225; 144 U. S. 550, cited with approval in *In re Debs,* 158 U. S. 564; *Ames* v. *Kansas,* 111 U. S. 449; *Harding* v. *Woodcock,* 137 U. S. 43; *South Carolina* v. *Port Royal &c. Ry. Co.,* 56 Fed. Rep. 333; *People* v. *Rock Island &c. Ry. Co.,* 71 Fed. Rep. 753; *Minnesota* v. *Duluth &c. Ry. Co.,* 87 Fed. Rep. 497; *Tennessee* v. *Union Bank,* 152 U. S. 454.

The cause was properly removed because of the plaintiff's assertion of right and claim of relief under the Constitution and laws of the United States.

Besides the claims of the State under the full faith and credit clause of Article IV of the Constitution, and its claim under the swamp land granting acts of Congress, the State asserts a right as a property owner and as engaged in interstate commerce to carry on that commerce free from obstruction by combinations in restraint of commerce or by monopolies of such commerce—substantially the same right as that asserted by the United States in the *Debs Case,* 158 U. S. 564, 583. A citizen's right to carry on interstate commerce is a constitutional right. *Crutcher* v. *Kentucky,* 141 U. S. 47, 57; *Reid* v. *Colorado,* 187 U. S. 137. And there can be no doubt that a State has the same right as a citizen.

The bill plainly asserts a right under the Constitution as well as under the Anti-Trust Act, and this gives jurisdiction. Whether the bill sufficiently alleges continuous or threatened injury to that right to make a case for the relief prayed or for any equitable relief is not a question of jurisdiction, but a question for the court to decide in the exercise of jurisdiction. *Swafford* v. *Templeton*, 185 U. S. 487, 493; *Southern Pacific R. Co.* v. *California*, 118 U. S. 112; *Hax* v. *Caspar*, 31 Fed. Rep. 499; *Lowry* v. *Chicago, B. & Q. R. Co.*, 46 Fed. Rep. 83.

The Circuit Court in a case like this, upon acquiring jurisdiction of the cause by reason of the Federal questions presented by the bill on the constitutionality of the state legislation and on the claim of rights under the Constitution and laws, has jurisdiction to decide, not only these Federal questions, but every question, Federal or non-Federal, that may be presented by the bill or arise upon the other pleadings or the evidence. *Osborn* v. *Bank of United States, supra*. It may decide the cause on these non-Federal grounds, without deciding or even considering the Federal questions presented by the bill. And this is the proper course where the Federal questions are constitutional questions. *Santa Clara Co.* v. *Southern Pacific R. R.*, 118 U. S. 394, 410. Its jurisdiction remains the same although the plaintiff should fail to establish by proofs the facts alleged as showing a right under the Constitution or laws or otherwise raising a Federal question, for the jurisdiction is determined by the averments of the bill. *Southern Pacific R. Co.* v. *California*, 118 U. S. 109, 112; *City Ry. Co.* v. *Citizens R. R. Co.*, 166 U. S. 537, 562.

And the fact that the Federal questions may receive little or no attention in the argument in this court, or even in the Circuit Court, does not affect the jurisdiction of either court. It may pass by the questions argued and decide the Federal questions.

MR. JUSTICE HARLAN delivered the opinion of the court.

By a statute of Minnesota passed March 9, 1874, it was pro-

vided that no railroad corporation or the lessees, purchasers or managers thereof should consolidate the stock, property or franchises of such corporation with, or lease or purchase the works or franchises of, or in any way control, any other railroad corporation owning or having under its control a parallel or competing line; nor should any officer of such corporation act as an officer of any other railroad corporation owning or having the control of a parallel or competing line; and the question whether railroads were parallel or competing lines should, when demanded by the party complainant, be decided by a jury as in other civil issues.   Laws, Minnesota, 1874, p. 154.

A subsequent statute, passed March 3, 1881, provided that any railroad corporation, either domestic or foreign, whether organized under a general law or by virtue of a special charter, might lease or purchase, or become owner of or control, or hold the stock of, any other railroad corporation, when the respective railroads could be lawfully connected and operated together "so as to constitute one continuous main line, with or without branches," § 1; and that any railroad corporation, whose lines of railroad, within or without the State, might be lawfully connected and operated together to constitute one continuous main line, so as to admit of the passage of trains over them without break or interruption, "could consolidate their stock and franchises so as to become one corporation." § 2. But by the same statute it was provided that no railroad corporation should consolidate with, lease or purchase, or in any way become owner of, or control any other railroad corporation, or any stock, franchises, rights of property thereof, which owned or controlled "a parallel or competing line." § 3. Laws of Minnesota, 1881, p. 109.

At a later date, 1899, the Legislature of Minnesota passed another statute relating principally to such restraints upon trade and commerce as interfered with competition among those engaged therein.   That statute contained these provisions:

"SEC. 1. Any contract, agreement, arrangement or conspiracy, or any combination in the form of a trust, or otherwise, hereafter entered into which is in restraint of trade or commerce within this State, or in restraint of trade or commerce between any of the people of this State and any of the people of any other State or country, or which limits or tends to limit or control the supply of any article, commodity or utility, or the articles which enter into the manufacture of any article [or] utility, or which regulates, limits or controls or raises or tends to regulate, limit, control or raise the market price of any article, commodity or utility, or tends to limit or regulate the production of any such article, commodity or utility, or in any manner destroys, limits or interferes with open and free competition in either the production, purchase or sale of any commodity, article or utility, is hereby prohibited and declared to be unlawful.

" That when any corporation heretofore or hereafter created, organized or existing under the laws of this State, whether general or special, hereafter unites in any manner with any other corporation wheresoever created, or with any individual, whereby such corporation surrenders or transfers, by sale or otherwise, in whole, or in part, its franchise, rights or privileges or the control or management of its business to any other corporation or individual, or whereby the business or the management or control of the business of such corporation is limited, changed or in any manner affected, and the purpose or effect of such union or combination is to limit, control or destroy competition in the manufacture or sale of any article or commodity, or is to limit or control the production of any article or commodity, or is to control or fix the price or market value of any article or commodity, or the price or market value of the material entering into the production of any article or commodity, or in case the purpose or effect of such union or combination is to control or monopolize in any manner the trade or commerce, or any part thereof, of this State or of the several States, such union, combination, agreement, arrange-

ment or contract is hereby prohibited and declared to be unlawful. . . .

"SEC. 3. Any corporation heretofore or hereafter created, organized or existing under the laws of this State, which shall hereafter either directly or indirectly make any contract, agreement or arrangement, or enter into any combination, conspiracy or trust, as defined in section one of this act, shall, in addition to the penalty prescribed in section-two of this act, forfeit its charter, rights and franchises, and it shall thereafter be unlawful for such corporation to engage in business, either as a corporation or as a part of any combination, trust or monopoly, except as to the final disposition of its property under the laws of this State. . . .

"SEC. 6. That for the purpose of carrying out the provisions of this act any citizen of this State may, and it is hereby declared to be the duty of the Attorney General, to institute, in the name of the State, proceedings in any court of competent jurisdiction against any person, partnership, association or corporation who may be guilty of violating any of the provisions of section one of this act, for the purpose of imposing the penalties imposed by this act, or securing the enforcement of section three hereof." Gen. Laws, Minnesota, 1899, c. 359.

These statutes being in force, the State of Minnesota instituted this suit in one of its own courts against the Northern Securities Company, a corporation of New Jersey; the Great Northern Railway Company, a corporation of Minnesota; the Northern Pacific Railway Company, a corporation of Wisconsin, which, having filed its articles of incorporation with the Secretary of State of Minnesota, became subject to the laws of that State relating to railroad corporations; and James J. Hill, as President of the Northern Securities Company, and individually.

What is the nature of the case as disclosed by the complaint filed in the state court?.

The complaint alleged—

That the Great Northern Railway Company and the North-

ern Pacific Railway Company each owned or controlled and maintained a system of railways connecting the Great Lakes and the Pacific Ocean, their main roads constituting, substantially, parallel and competing lines;

That pursuant to an agreement between the defendant Hill and other stockholders of the Great Northern Railway Company (representing a controlling interest in the stock of that company) and J. Pierpont Morgan and other stockholders of the Northern Pacific Railway Company (representing a controlling interest in the stock of that company) the Northern Securities Company was incorporated solely as an instrumentality through which the stock, property and franchises of the Great Northern and Northern Pacific Railway companies should be consolidated in effect, if not in form, and the management and control of their business affairs, respectively, including the fixing of rates and charges for the transportation of passengers and freight over any and all the lines of railway of each of those companies, as well within as without the State, be vested in and controlled by the Securities Company, and all competition in freight and passenger traffic between the two systems of railway, within and without the State, to be suppressed and removed; that by means of such arrangement it was sought and intended to ignore, evade and violate the laws of the State prohibiting as well the consolidation of the stock, property or franchise of parallel or competing lines of railway therein, and the control or management thereof, as all combinations in restraint of trade or commerce within the State, and between the people of Minnesota and the people of other States and countries; and, that if the Securities Company was allowed to hold and control the stocks of the constituent railway companies and to carry out the purpose and object of its incorporators, as well as its own, "full faith and credit will not be given to the public acts of this complainant and it will be deprived of a further right guaranteed to it by the Constitution of the United States;"

That the said scheme had been consummated, and said two

railway systems were now under the absolute management and control of the Securities Company, and "by reason thereof all competition between said lines has been destroyed and a monopoly in railway traffic in Minnesota (as well as without said State) has been created, to the great and permanent and irreparable damage of the State of Minnesota, and to the people thereof, and in violation of its laws, *and of the laws of the United States* in such case made and. provided, viz: The act of Congress approved July 2, 1890, entitled 'An act to protect trade and commerce against unlawful restraints and monopolies;' " and

That the carrying out the above agreements and plan of consolidation and monopoly, and in every step taken to consummate it, the officers and directors of each of said railway companies were severally fully advised and consented thereto, and, unless restrained by this court, the Securities Company would continue to manage and control the business and affairs of the Great Northern and Northern Pacific Railway companies, and to suppress all competition between them for freight and passenger traffic, as well as to monopolize railway traffic in that State, to the irreparable damage of the State and the people thereof.

The substantial relief asked was a decree declaring, among other things, the alleged agreement and combination to be unlawful, and all acts done and to be done in pursuance thereof contrary to and in violation of the laws of Minnesota *and of the United States;* prohibiting the Securities Company, its agents and officers, from acquiring, receiving, holding, voting or in any manner acting as the owner of any of the shares of the capital stock of either the Northern Pacific or the Great Northern Railway Company, or from exercising any management, direction or control over the constituent companies; and enjoining those railway companies from recognizing, or accepting the Northern Securities Company as the holder or owner of any shares of the capital stock of either of those companies, or from effecting any combination or agreement

that would disturb their independent integrity, management and control, respectively, or that would directly or indirectly destroy free and unlimited competition between them by interchange of traffic, poolings of earnings, division of property or otherwise.

The Securities Company, appearing specially for that purpose, filed its petition for the removal of the case into the Circuit Court of the United States upon the ground that the suit was of a civil nature, in equity, involved, exclusive of costs, the sum of two thousand dollars, and was *one arising under the Constitution and laws of the United States.*

The state court approved the required statutory bond for removal, and made an order, reciting that the case was removed to the Federal court.

The Northern Securities Company, appearing specially for that purpose, gave notice of a motion to have the service of summons upon it vacated. Notice was also given of a like motion as to the service of summons upon defendant Hill in his capacity as President of that company. Subsequently, the company, and defendant Hill as its President, gave notice that the above notices were withdrawn, and they accordingly entered their appearance in the cause.

At a later date the defendants severally answered, and the State filed its replication to each answer. Proofs were taken, and the cause having been heard, the bill was dismissed upon the merits. 123 Fed. Rep. 692.

After the cause was argued here the parties were invited to submit briefs upon the question whether the Circuit Court of the United States could take cognizance of the case upon removal from the state court. From the briefs filed in response to that invitation it appeared that both sides deemed the case a removable one and insist 'that this court should consider the merits as disclosed by the pleadings and evidence. But consent of parties can never confer jurisdiction upon a Federal court. If the record does not affirmatively show jurisdiction in the Circuit Court, we must, upon our own

motion, so declare, and make such order as will prevent that court from exercising an authority not conferred upon it by statute. *Mansfield C. & L. M. Railway Co.* v. *Swan*, 111 U. S. 379, 382; *Robertson* v. *Cease*, 97 U. S. 646; *King Bridge Co.* v. *Otoe County*, 120 U. S. 225; *Parker* v. *Ormsby*, 141 U. S. 81; *Mattingly* v. *Northwestern Va. R. R.*, 158 U. S. 53, 57; *Great Southern Fire Proof Hotel Co.* v. *Jones*, 177 U. S. 449, 453; *Continental National Bank* v. *Buford*, 191 U. S. 119; *Defiance Water Co.* v. *Defiance*, 191 U. S. 184, 194.

We proceed, therefore, to inquire whether the Circuit Court could take cognizance of this case upon removal from the state court and make a final decree upon the merits.

Of course, the Circuit Court could not take cognizance of the case as one presenting a controversy between citizens of different States; for the State of Minnesota is not a citizen within the meaning of the Constitution or the acts of Congress. *Postal Tel. Cable Co.* v. *Alabama*, 155 U. S. 482, 487.

But the first section of the Judiciary Act of 1887-8, 24 Stat. 552, c. 373; 25 Stat. 433, c. 866, provides, among other things, that the Circuit Courts of the United States may take original cognizance of all suits of a civil nature at law or in equity, arising under the Constitution or laws of the United States, where the matter in dispute, exclusive of costs, exceeds in value the sum of two thousand dollars. And the second section provides for the removal from a state court of "any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States . . . of which the Circuit Courts of the United States are given original jurisdiction by the preceding section."

In *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454, 461, which involved the scope and meaning of the acts of 1887-8, in respect of cases arising under the Constitution or laws of the United States, this court, after referring to section one, said: "But the corresponding clause in section 2 allows removals from a state court to be made only by defendants, and of suits 'of which the Circuit Courts of the United States are given

original jurisdiction by the preceding section,' thus limiting the jurisdiction of a Circuit Court of the United States *on removal* by the defendant under this section to such suits *as might have been brought* in that court *by the plaintiff under the first section.* 24 Stat. 553; 25 Stat. 434. The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this court, to contract the jurisdiction of the Circuit Courts of the United States." *Mexican Nat. Railroad* v. *Davidson,* 157 U. S. 201, 208; *Metcalf* v. *Watertown,* 128 U. S. 586. And in *Chappell* v. *Walerworth,* 155 U. S. 102, 107, the court, referring to *Tennessee* v. *Union & Planters' Bank,* said that it was there adjudged, upon full consideration, that, under the act of 1887–8, "a case (not depending on the citizenship of the parties, nor otherwise specially provided for,) cannot be removed from a state court into the Circuit Court of the United States, *as one arising under the Constitution, laws or treaties of the United States,* unless that appears by the plaintiff's statement of his own claim; and that, if it does not so appear, the want cannot be supplied by any statement in the petition for removal, or, in the subsequent pleadings." To the same effect are *Postal Tel. Cable Co.* v. *Alabama,* 155 U. S. 482, 487; *United States* v. *American Bell Tel. Co.,* 159 U. S. 548, 553; *Oregon Short Line* v. *Skottowe,* 162 U. S. 490, 494; *Texas & Pacific Railway Co.* v. *Cody,* 166 U. S. 606, 608; *Pratt* v. *Paris Gas Light & Coke Co.,* 168 U. S. 255, 258; *Walker* v. *Collins,* 167 U. S. 57, 59; *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185; *Western Union Tel. Co.* v. *Ann Arbor Railroad Co.,* 178 U. S. 239. These cases establish, beyond further question in this court, the rule that, under existing statutes regulating the jurisdiction of the courts of the United States, a case cannot be removed from a state court, as one arising under the Constitution or laws of the United States, unless the plaintiff's complaint, bill or declaration shows it to be a case of that character. "If it does not appear at the outset," this court has quite recently said, "that the suit is one of which the Circuit Court at the time its jurisdiction

is invoked could properly take cognizance, the suit must be dismissed." *Third St. & Suburban Ry.* v. *Lewis*, 173 U. S. 457, 460.

We must then inquire whether the complaint presents a case arising under the Constitution or laws of the United States, in respect of which the original jurisdiction of the Circuit Court could have been invoked by the State.

The real purpose of the suit was to annul the agreement and suppress the combination alleged to exist between the defendant corporations upon the ground that such agreement and combination were in violation, first, of the laws of Minnesota, and, second, *of the Anti-Trust Act of Congress.* If relief had been asked upon the ground alone that what the defendant corporations had done and would, unless restrained, continue to do, was forbidden by the statutes of Minnesota, the Circuit Court of the United States could not have taken cognizance of the case; for confessedly such a controversy would not have been one between citizens of different States, nor could such a suit have been deemed one arising under the Constitution or laws of the United States.

The contention, however, is that a case arising under the laws of the United States was presented by the allegation in the complaint that the combination and consolidation between the Great Northern and Northern Pacific Railway Companies and their control of their affairs and operations by the Northern Securities Company, were also in violation of the Anti-Trust Act of Congress of July 2, 1890. An allegation in a complaint filed in a Circuit Court of the United States may, indeed, in a sense, confer jurisdiction to determine whether the case is of the class of which the court may properly take cognizance for purposes of a final decree on the merits. *Newburyport Water Co.* v. *Newburyport*, 193 U. S. 561, and *Pacific Electric Ry. Co.* v. *Los Angeles, post,* page 112, decided at present term. But if, notwithstanding such an allegation, the court finds, at any time, that the case does not really and substantially involve a dispute or controversy within its jurisdiction then, by the

express command of the act of 1875, its duty is to proceed no further. That is manifest from the fifth section of that act, which provides: "That if, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or *removed thereto*, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit *or remand it to the court from which it was removed* as justice may require, and shall make such order as to costs as shall be just." 18 Stat. 470. That provision has not been superseded by any subsequent legislation.

Does the present suit really and substantially involve a dispute or controversy properly within the jurisdiction of the Circuit Court? That is to say, could the suit, as disclosed by the complaint, have been brought by the State originally in that court? If it could not, then, under the act of 1887-8 and the adjudged cases, it should not have been removed from the state court and should be remanded.

By the first section of the Anti-Trust Act every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, is declared to be illegal. The second section condemns the monopolizing or attempting to monopolize, or combining or conspiring to monopolize, any part of such trade or commerce. By the third section, every contract, combination in the form of trust or otherwise, or conspiracy in restraint of commerce in any Territory of the United States or the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or

with any foreign States, or between the District of Columbia and any State or States or foreign nations, is declared to be illegal. A violation of the provisions of each section is made a misdemeanor, punishable by a fine not exceeding five thousand dollars or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court. Of course, a criminal prosecution under the act must be in the name of the United States and in a court of the United States— the District Attorney who conducts the prosecution being subject to the direction of the Attorney General as to the manner in which his duties shall be discharged. Rev. Stat. 362.

The fourth, sixth, seventh and eighth sections of the act are as follows:

"SEC. 4. The several Circuit Courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of this act; and it shall be the duty of the several District Attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petition setting forth the case and praying that such violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and, pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises."

"SEC. 6. Any property owned under any contract or by any combination, or pursuant to any conspiracy (and being the subject thereof) mentioned in section one of this act, and being in the course of transportation from one State to another; or to a foreign country, shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the forfeiture, seizure and condemnation of property imported into the United States contrary to law.

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee.

"Sec. 8. That the word 'person,' or 'persons     ierever used in this act, shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State or the laws of any foreign country." 26 Stat. 209.

It thus appears that the act specifies four modes in which effect may be given to its provisions. It is clear that the present suit does not belong to either of those classes. It is not a criminal proceeding, (§§ 1, 2, 3,) nor a suit in equity in the name of the United States to restrain violations of the Anti-Trust Act, (§ 4,) nor a proceeding in the name of the United States for the forfeiture of property being in the course of transportation, (§ 6,) nor an action by any person or corporation for the recovery of threefold damages for injury done to business or property by some other person or corporation. (§§ 7, 8.)

But it is said that as the act of Congress was for the benefit of all the States and all the people, this case is to be deemed one arising under the laws of the United States, and, therefore, cognizable by the Circuit Court, because one of the objects of the State of Minnesota by its suit is to protect c₁    in of its proprietary interests, which, it is alleged, would be injured by violations, on the part of the defendants, of the act of Congress. Let us see what, in that view, is the case as presented by the complaint.

The complaint alleged that the State is the owner of more than three million acres of land, of the value of more than fifteen millions of dollars, obtained, by donation, from the United States, and that "the value of said lands, and the

salability thereof, depends, in very large measure, upon having free, uninterrupted and open competition in passenger and freight rates over the lines of railway owned and operated by said Great Northern and Northern Pacific Railway companies."

The bill also alleges "that many of said lands are vacant and unsettled and located in regions not at present reached by railway lines, and depend for settlement upon the construction of lines in the future; that it has heretofore been the practice of said Great Northern and Northern Pacific Railway companies, respectively, to extend spur lines into territory adjacent to each of said roads, as well as into new territory, for the purpose of developing such territory, as well as to obtain traffic therefrom; that such new lines have been built in the past very largely by reason of the rivalry heretofore existing between said companies for existing, as well as new, business; that under the consolidation and unity of control hereinafter set forth such rivalry will cease, and many of the lands now owned by the State of Minnesota will not be reached by railroads for years to come, if at all, owing to such combination and consolidation removing all rivalry and competition between said companies; that the settlement and occupation of said lands will add very much to their value, and such occupation will depend entirely upon the accessibility of railway lines and transportation facilities for marketing the products raised thereon; that if said lands are sold and become occupied, they will add very largely to the taxable value of the property of the State, and that said lands cannot be so sold, or the income of the State increased thereby, without the construction of railroad lines to or adjacent to the same."

It was further alleged that the State is the owner of, and has maintained at large expense, a state university, hospitals for the insane, normal schools for teachers, a training school for boys and girls, schools for deaf, dumb, blind and feeble-minded persons, a state school for indigent and homeless children, and a state penitentiary; that a great portion of the supplies of every kind for such institutions must, of necessity, be shipped

over the different lines of railway owned and operated by the
Northern Pacific and Great Northern Railway companies;
that the amount of taxes which the State must collect, and the
successful maintenance of its public institutions, as well as the
performance of its governmental functions and affairs, depend
largely upon the value of the real and personal property situ-
ated within the State and the general prosperity and business
success of its citizens; and that such prosperity and business
depend very largely upon maintaining in the State free, open
and unrestricted competition between the railway lines of
those two companies.

The injury on account of which the present suit was brought
is at most only remote and indirect; such an injury as would
come alike, although in different degrees, to every individual
owner of property in a State by reason of the suppression, in
violation of the act of Congress, of free competition between
interstate carriers engaged in business in such State; not such
a direct, actual injury as that provided for in the seventh sec-
tion of the statute. . If Minnesota may, by an original suit,
in its name, invoke the jurisdiction of the Circuit Court, be-
cause alone of the alleged remote and indirect injury to its
proprietary interests arising from the mere absence of free
competition in trade and commerce as carried on by interstate
carriers within its limits, then every State upon like grounds
may maintain, in its name, in a Circuit Court of the United
States, a suit against interstate carriers engaged in business
within their respective limits. Further, under that view, every
individual owner of property in a State may, upon like general
grounds, by an original suit, irrespective of any direct or special
injury to him, invoke the original jurisdiction of a Circuit
Court of the United States, to restrain and prevent violations
of the Anti-Trust Act of Congress. We do not think that
Congress contemplated any such methods for the enforcement
of the Anti-Trust Act. We cannot suppose it was intended
that the enforcement of the act should depend in any degree
upon original suits in equity instituted by the States or by

individuals to prevent violations of its provisions. On the contrary, taking all the sections of that act together, we think that its intention was to limit direct proceedings in equity to prevent and restrain such violations of the Anti-Trust Act as cause injury to the general public, or to all alike, merely from the suppression of competition in trade and commerce among the several States and with foreign nations, to those instituted in the name of the United States, under the fourth section of the act, by District Attorneys of the United States, acting under the direction of the Attorney General; thus securing the enforcement of the act, so far as direct proceedings in equity are concerned, according to some uniform plan, operative throughout the entire country. Possibly the thought of Congress was that by such a limitation upon suits in equity of a general nature to restrain violations of the act, irrespective of any direct injury sustained by particular persons or corporations, interstate and international trade and commerce and those carrying on such trade and commerce, as well as the general business of the country, would not be needlessly disturbed by suits brought, on all sides and in every direction, to accomplish improper or speculative purposes. At any rate, the interpretation we have given of the act is a more reasonable one. It is a safe and conservative interpretation, in view as well of the broad and exclusive power of Congress over interstate and international commerce as of the fact that, so far as such commerce is concerned, Congress has prescribed a specific mode for preventing restraints upon it, namely, suits in equity under the direction of the Attorney General. Of the present suit the Attorney General has no control, and is without any responsibility for the manner in which it is conducted, although, in its essential features, it is just such a suit as would be brought by his direction when proceeding under the fourth section of the Anti-Trust Act.

The State presents still another view of the question of jurisdiction. Its complaint alleges that if the Securities Company be allowed to hold and control the stocks of the Great Northern

and Northern Pacific Railway companies and to carry out the purpose and object of its incorporation, full faith and credit will not be given to the public acts of the State. This, it is contended, presents a case arising under Article IV of the Constitution, providing that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." It is said by the state's counsel that the "gravamen of the charge in appellant's complaint is that the defendants created a corporation device in New Jersey and used it for the purpose and with the result that property rights in Minnesota were affected, in violation of its laws. Our contention is that Article IV must be so construed as to make the constitutional enactment of Minnesota effective throughout the United States, so far as they apply to and affect property rights within the State. Otherwise the policy and laws of any State may be easily evaded." We do not think that the clause of the Constitution above quoted has any bearing whatever upon the question under consideration. It only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records and judicial proceedings of a State other than that in which the court is sitting. Even if it be assumed that the word "acts" includes "statutes," the clause has nothing to do with the conduct of individuals or corporations; and to invoke the rule which it prescribes does not make a case arising under the Constitution or laws of the United States.

What was the duty of the Circuit Court when it ascertained that the suit was not one of which it could take cognizance? The answer is indicated by the clause of the Judiciary Act of March 3, 1875, to which we have adverted.

For the reasons stated, we are of opinion that the suit does not—to use the words of the act of 1875—really and substantially involve a dispute or controversy within the jurisdiction of the Circuit Court for the purposes of a final decree. *Western Union Tel. Co.* v. *Ann Arbor R. R. Co.*, 178 U. S. 239, 243.

That being the case, the Circuit Court, following the mandate of the statute, should not have proceeded therein, but should have remanded the cause to the state court.

*The decree of the Circuit Court is reversed and the case is sent back with directions that it be remanded to the state court.*