**COMMONWEALTH OF PUERTO RICO, Plaintiff,**

v.

**CORDECO DEVELOPMENT CORPORATION, Defendant.**

**Civ. No. 81–0288.**

United States District Court, D. Puerto Rico.

March 17, 1982.

Héctor Reichard-Cardona, Secretary of Justice, Com. of Puerto Rico by Howard Charles, Atty., Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, P. R., for plaintiff.

Charles A. Cordero, San Juan, P. R., for defendant.

## REMAND ORDER

CEREZO, District Judge.

The Commonwealth of Puerto Rico filed a petition for expropriation on January 1979 in the Superior Court of Puerto Rico seeking the condemnation of part of defendant Cordeco's oceanfront property. The land condemned will serve as a recipient of the pluvial waters of a government housing project to be built nearby. Cordeco filed a Petition for Removal on March 4, 1981 which was later amended. Jurisdiction is invoked on the basis of diversity of citizenship, Cordeco being a corporation which is registered in Panama, and because the cause of action arises under the Constitution of the United States and other federal laws. Cordeco claims it has been deprived of property without due process of law because the expropriation proceedings are part of a plan devised by certain indi-

viduals[1] to make a profitable sale of the housing project. It contends that the housing project could not be sold unless the problem of the drainage of pluvial waters was solved and that the delay caused by this problem resulted in the expiration of a governmental permit for the project. It is further alleged that an expired permit for the project was then renewed without following legal procedures in the proper agency and that, as part of the plan, these individuals then induced the Governor of Puerto Rico to commence proceedings to condemn part of Cordeco's land. Cordeco claims that these series of events, plus the alleged inadequate appraisal of the land, all point to violations of the Fifth and Fourteenth Amendments and of 42 U.S.C. Secs. 1981, 1982, 1983, 1985. As a final alternative argument, it suggests that we exercise pendent jurisdiction over the expropriation proceedings because there are serious constitutional questions involved.

Plaintiffs urge that there is no diversity jurisdiction because the Commonwealth is the plaintiff in the condemnation proceedings and a "state" cannot be a citizen for diversity purposes.[2] Defendant argues, in turn, that the Commonwealth is only a nominal party[3] and that the real parties in interest are the Cooperative Development Company ("Agency") and the Agency's chief executive,[4] who are U. S. citizens, residents of Puerto Rico, and, therefore, as a foreign corporation, it is entitled to litigate in this forum since diversity jurisdiction exists. Plaintiffs' position is based primarily on the fact that the action is an exercise of its power of eminent domain, a power that has traditionally been associated with the sovereign characteristics of a state. *Louisiana Power and Light Co. v.*

*City of Thibodaux*, 360 U.S. 25, 26, 79 S.Ct. 1070, 1071, 3 L.Ed.2d 1058 (1959); *Galveston Wharf Co. v. Galveston*, 260 U.S. 473, 476, 43 S.Ct. 168, 169, 67 L.Ed. 355 (1923); *Long Island Water Supply Co. v. Brooklyn*, 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165 (1897). It cites *State v. American Machine & Foundry Co.*, 143 F.Supp. 703 (D.C.Colo. 1956) in its support. In that case, the District Court determined that the State of Colorado was the real party in interest due to the nature of the condemnation proceedings. Defendant, in turn, urges us to adopt the criteria of *Idaho Potato Commission v. Washington Potato Commission*, 410 F.Supp. 171 (D.C.Idaho 1975) where a financially independent government agency was held to be the real party in interest in enforcing the rights to a patent that it possessed. We find that the circumstances of this case bring it closer to *State v. American Machine, ante*, than to *Idaho Potato Commission, ante*. The nature of the action before us compels this conclusion.

 Under Rule 17(a) FRCP a real party in interest is one who by federal or local substantive law possesses the right sought to be enforced and not necessarily the person who will ultimately benefit from recovery. *Doherty v. Mutual Warehouse Co.*, 245 F.2d 609, 611 (5th Cir. 1957); see: 6 Wright & Miller, *Federal Practice and Procedure*, § 1541, p. 635 (1971). The purpose of Rule 17(a) is to ensure that the judgment will have proper *res judicata* effect by preventing a party not joined in the complaint from asserting the "real party in interest" status in an identical future suit; *Prevor-Mayorsohn Caribbean v. Puerto Rico Marine*, 620 F.2d 1, 4 (1st Cir. 1980), see: Advisory Committee Note to the 1966 Amend-

---

1. These individuals are defendants in a separate civil rights action filed by Cordeco, Civil No. 81–0289, which is essentially based on the same allegations which Cordeco here asserts as the jurisdictional basis for a cause "arising under."

2. There is no statute conferring diversity jurisdiction when a state is a party since a state cannot be a citizen. *Illinois v. City of Milwaukee*, 406 U.S. 91, 97 n.1, 92 S.Ct. 1385, 1389 n.1, 31 L.Ed.2d 712 (1972); *Minnesota v. Northern*

Secs. Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904); see generally: 14 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3723 at p. 599 (1971).

3. This argument was brought forth in the amended petition for removal after plaintiff had mentioned it in the Motion to Remand.

4. One of the defendants in the civil rights complaint. See note 1.

ment to Rule 17(a) (1980 West Ed.) p. 40. In order to determine if the party is complying with the rule, the court must first examine the substantive law supporting the right asserted in the cause of action and decide if the person claiming to be the real party in interest possesses that right. Rule 17(b) also indicates that the capacity of a corporation to sue will be determined by the law under which it was organized. The Supreme Court recently held that the determination of a real party in interest for purposes of diversity of jurisdiction, though roughly similar to the procedural guidelines of Rule 17 FRCP, must rest on the substantive right that a given party possesses. The Court considered that the real parties in interest were the trustees instead of the beneficiaries because "... they (the trustees) have legal title, manage the assets and control the litigation...." *Navarro Savings Ass'n. v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 1784, 64 L.Ed.2d 425 (1980). To determine the substantive character of a state as party to a proceeding in order to ascertain if diversity jurisdiction may be invoked, the inquiry must bear upon the essential nature of the proceeding to which a state is party. *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

■ The courts in Puerto Rico have long recognized the power of eminent domain as one inherent to the Commonwealth. *ELA v. Soc. Civil Agrícola e Industrial*, 104 DPR 392, 397 (1975); *P.R. Housing Authority v. District Court*, 68 PRR 50, 55 (1948) aff'd. 171 F.2d 563 (1st Cir. 1949). Although the power of eminent domain, as embodied in P.R.Laws Ann. Tit. 31 Sec. 1113 and Tit. 32 Secs. 2901–2920, can be exercised by government agencies, officers and municipalities, it is always by a delegation of power from the state that these instrumentalities may condemn property. No Commonwealth agency, officer, municipality nor any other government instrumentality may initiate a proceeding for condemnation unless the power of eminent domain has been delegated to it by the state. See: P.R. Laws Ann. Tit. 31 Sec. 1113, Tit. 32 Sec. 2902; *P.R. Housing Authority v. District*

*Court*, 68 PRR 50, 55–58 (1948) aff'd. 171 F.2d 563 (1st Cir. 1949). This principle is also evident in the statute prescribing the manner in which the U. S. Government will exercise its power of eminent domain. 40 U.S.C. Sec. 256, *et seq.* and *U. S. v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981); *Southern California Fin. Corp. v. U. S.*, 634 F.2d 521, 523 (Ct.Cl.1980). In other words, the origin of the power of eminent domain is not found in the instrumentality of government benefited by the expropriation but rather in the state itself.

Although the Puerto Rico Development Company has been authorized to acquire property by expropriation, it is only by requesting the Governor to initiate the proceedings and acquire the property on "behalf of the Commonwealth of Puerto Rico" that this agency can exercise the delegated power. P.R.Laws Ann. Tit. 5 Sec. 981h(b). When the agency returns to the Commonwealth the total amounts disbursed as compensation or when *the Governor* deems it necessary that the title be vested in the agency, then by order of the court, title to the property is conveyed to the agency *id.* at Sec. 981h(d)(e). In the meantime, title is vested in the Commonwealth and is recorded as such in the Registry of Property. P.R.Laws Ann. Tit. 32 Sec. 2907. There is no indication in the law creating this agency that it is empowered to initiate condemnation proceedings in its own name. The fact that the agency cannot *per se* initiate the proceedings but must request the Governor to institute the action on behalf of the Commonwealth is a clear indication that the Legislature of Puerto Rico chose to limit the delegation to this agency by the manner the power was to be exercised. This limitation is not unique to this agency but is found in many government instrumentalities to which a similar concession has been granted. See: P.R.Laws Ann. Tit. 32 Sec. 2916 (Municipalities), Tit. 5 Sec. 931r(a) (Cooperative Development Administration); Tit. 22 Sec. 149 (Aqueduct & Sewer Authority); Tit. 22 Sec. 6 (Public Works Dept.); Tit. 22 Sec. 203 (Electric Power Authority); Tit. 23 Sec. 251g (Commercial

Development Co.); Tit. 23 Sec. 278m (Industrial Development Co.), etc. Not all government instrumentalities in Puerto Rico to which the power of eminent domain has been delegated are limited in this manner. The enabling statutes of the Puerto Rico Land Administration, for example, when describing the proceeding by which it may acquire property by condemnation, states: "The power hereby conferred on the Governor" (to initiate the condemnation proceedings on behalf of the agency) "shall not limit or restrain the authority of the Administration to institute itself the condemnation proceedings when it may deem it convenient." P.R.Laws Ann. Tit. 28 Sec. 264. The Puerto Rico Housing Authority also has been expressly permitted to exercise the power of eminent domain in its own name. *Id.* Tit. 17 Sec. 14. These express provisions, outlining the manner in which the power of eminent domain is exercised, reinforce the proposition that the requirement imposed on some agencies limiting the initiation of the proceeding to the Governor on behalf of the Commonwealth is part of a deliberate legislative scheme that we assume responds to constitutional considerations. See: P.R.Cons. Art. II Sec. 9. In fact, an examination of the legislative debate preceding the enactment of the enabling statutes of the Puerto Rico Cooperative Development Company reveals concern for the dangers of creating a centralized powerful agency. To quiet some of these fears, and in particular the matter of the agency's condemnation power, the legislators expressed that the power of condemnation that would be delegated to the agency was checked by the safeguards in the Constitution and by the fact that the power could only be exercised by the Governor on behalf of the Commonwealth. Vol. 20 Sessions Diary, House of Representatives 1966 p. 1272.

Absent an issue as to the public use of the property to be condemned or of its adequate compensation, this Court has no reason to question why the Puerto Rican Legislature chose to restrict the delegation of the power of eminent domain on some government agencies by limiting the manner of exercising the expropriation proceeding. See: *Rindge Co. v. Los Angeles*, 262 U.S. 700, 709, 43 S.Ct. 689, 693, 67 L.Ed. 1186 (1922); *P.R. Housing Authority, ante.* For purposes of the present analysis, it is sufficient to note that, pursuant to the enabling statutes of the Cooperative Development Company, this agency cannot initiate condemnation proceedings itself but must request action by the Commonwealth through its Governor. The Commonwealth is the sole entity that possesses the power as well as the capacity to exercise the substantive right underlying the cause of action sought to be removed, and therefore, it is the only party—now or in the future—that can initiate the proceeding thereby diluting any possible dangers of a judgment without *res judicata* effects. The Commonwealth, as the party instituting the action and continuing it to the end, may determine at any stage in the proceedings not to continue with the condemnation. *Iriarte v. Secretary of the Treasury*, 84 PRR 164, 171 (1964). The control of the litigation, the legal title to the property as well as the initial management of the assets that may be forwarded as additional compensation are all in the hands of the Commonwealth.

■ The long recognized principle that the power of eminent domain is inherent to the sovereignty of a state and the particular legislative design here involved lead us to conclude that the real substantive as well as procedural party in interest, is the Commonwealth of Puerto Rico.[5] This being so, there can be no federal diversity jurisdiction in the action sought to be removed.

■ The other jurisdictional argument deals with the determination of jurisdiction based on "federal question" when removal is requested pursuant to 28 U.S.C. Sec. 1441(a). The established test used to determine the existence of jurisdiction based on federal question—the well pleaded complaint rule, *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39

---

**5.** For these purposes the Commonwealth is treated as a state. See 28 U.S.C. § 1332(d).

L.Ed.2d 209 (1974); *Louisville v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911) does not seem to be applied with the usual confidence and vigor when removal is the vehicle that brings the matter of jurisdiction to the Court's attention. Various cases and some commentators have suggested that sometimes when jurisdiction is asserted by way of removal it is necessary to examine the petition for removal and the record as a whole in order to make a proper and just evaluation of a defendant's jurisdictional allegations. See: *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir. 1976); *Avco Coop. v. Aero Lodge*, 376 F.2d 337 (6th Cir. 1967). See generally: 14 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3722 (1976). However, the general rule, as announced by our Circuit is:

> For a suit to be one that arises under the laws of the United States so as to confer original or removal jurisdiction on the federal courts, it must appear on the face of the complaint that resolution of the case depends upon a federal question (citations omitted) .... The fact that a defense to the action may raise a federal question ... is immaterial (citations omitted) ....
> *Brough v. United Steelworkers of America*, 437 F.2d 748, 749 (1st Cir. 1971).

It is possible that in the interests of justice certain circumstances may require a departure from this general rule. See: *Oquendo v. Dorado Beach Hotel Corp.*, 382 F.Supp. 516 (DCPR 1974). When a plaintiff conceals a federal cause of action by clever draftsmanship, for example, or when important facts as to the status of the parties that may be crucial to determine federal jurisdiction are omitted from the complaint it may be necessary for the court to attend to matters not expressly mentioned in the four corners of the complaint. However, this search is in reality an extended examination of the complaint since what defendant may signal are facts that complement the pleadings or that help in understanding the real nature of the complaint in order to determine whether the allegations are disguising a claim to avoid federal jurisdiction.

If the probe of matters not pleaded in the complaint is in effect a search that will always revert to what the complaint contains and if the purpose of the examination is to understand the real nature of the complaint rather than to add extraneous elements to it, then this doctrine, useful in approaching the particular problems that may arise in a removal procedure, can be reconciled with the traditional principle contained in the "well pleaded complaint" rule. See: *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ Although defendant's suggestion that we exercise pendent jurisdiction is not presented in the proper case (see note 1) we believe there is no need to exercise this discretionary power. Aside from the alleged existence of "substantial constitutional questions," defendant has not indicated any other persuasive reason that would convince this Court of the necessity of exerting pendent jurisdiction. Puerto Rico provides adequate procedural and substantive remedies to deal with defendant's "serious constitutional questions." P.R.Laws Ann. Tit. 32 App. III R. 58, P.R.Const. Art. II Sec. 9. Our decision today that the Commonwealth is the real party in interest in the eminent domain proceeding sought to be removed and the command of the Eleventh Amendment bring forth additional considerations that prevent us from exerting pendent jurisdiction. But above all, it is imperative to recognize that the power of pendent jurisdiction is a discretionary one, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that should not be exercised when possible friction between state and federal government may result. See 3A Moore's *Federal Practice*, Sec. 18.07(1–3). We need not repeat the reasons why the proceeding sought to be removed is pregnant with the possibility of this type of conflict. Cf. *United States v. States Tax Commission*, 481 F.2d 963, 976 (1st Cir. 1973) (pendent jurisdiction not exercised in order to avoid interference with state taxation design). In any event, defendant has not shown any circumstances

that would justify the application of this exceptional rule. An examination of the Petition for Expropriation reveals that there is no covert federal claim camouflaged by clever drafting. Nor is there any indication that federal jurisdiction is fraudulently concealed. See: *Villarreal, ante,* and *Espino v. Volkswagen de P.R., Inc.,* 289 F.Supp. 979, 981 (DCPR 1968). The fact of the matter is that the complaint is a typical petition for expropriation in apparent compliance with the requirements of local law. All federal questions asserted by defendant arise from the defenses brought forth in the amended petition for removal and the answer to the complaint. See: *Burough v. United Steelworkers, ante.* These matters do not relate in any way to the pleadings of the complaint and are totally extrinsic to the allegations in the Petition to Expropriate. We find no basis for removal of the action upon the existence of jurisdiction based on "federal question."

Defendant's jurisdictional arguments fail to place the expropriation proceedings even close to the fringes of Article III. Removal is unwarranted and the case is remanded.

SO ORDERED.