**John C. ESSER, Plaintiff,**

v.

**Susan Baker Esser ROACH, Defendant.**

Civ. A. No. 2:92cv1013.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 3, 1993.

Mary G. Commander, Paul M. Lipkin, Goldblatt, Lipkin & Cohen, Norfolk, VA, for plaintiff.

Louis R. Hollowell, James W. Jones, Jones and Hollowell, P.C., Chesapeake, VA, for defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff seeks a declaratory judgment to the effect that he is entitled to custody of his son pursuant to an order entered by the Family Court of the City of Chesapeake, Virginia. He alleges that this court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1331 and the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A.

This matter comes before the court on defendant's motion to dismiss and plaintiff's motions to strike and for default judgment. For the reasons stated herein, the court determines that it has no jurisdiction over the subject matter of this action and GRANTS defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1).

### I. Facts

The undisputed facts are as follows. Plaintiff John C. Esser and defendant Susan Baker Esser Roach married in 1976. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) Both were North Carolina residents when they wed. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) Plaintiff since has become a Virginia resident. (Pl.'s Compl. ¶ 3.) Their child, Jonathan Rhett Esser, was born August 10, 1977. (Pl.'s Compl. ¶ 3; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) The parties divorced in 1981. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) On July 7, 1981, the General Court of Justice, District Court Division for Guilford County, North Carolina ("the North Carolina court"), granted custody of Jonathan to defendant, his

mother. (Pl.'s Compl. ¶ 4; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.)

In September, 1990, the parties agreed that Jonathan would live temporarily with plaintiff, his father, in Chesapeake, Virginia.[1] (Pl.'s Compl. ¶ 5; Pl.'s Mem. in Opp. to Mot. to Dismiss, Ex. A; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) In June, 1991, plaintiff filed a petition for custody of his son in the Juvenile and Domestic Relations District Court in Chesapeake ("the Virginia court"). (Pl.'s Compl. ¶ 5; Pl.'s Mem. in Opp. to Mot. to Dismiss, Ex. A; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) The Virginia court conferred with the North Carolina court, pursuant to the Uniform Child Custody Jurisdiction Act. (Pl.'s Compl. ¶ 7; Pl.'s Mem. in Opp. to Mot. to Dismiss, Ex. A.) Both courts found they had jurisdiction over the child's custody. (Pl.'s Compl. ¶ 8; Pl.'s Mem. in Opp. to Mot. to Dismiss, Exs. A and B; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.)

By order entered July 16, 1991, the Virginia court granted plaintiff temporary legal custody of Jonathan. The court awarded defendant visitation rights extending essentially from the date of the order until August 18, 1991. (Pl.'s Mem. in Opp. to Mot. to Dismiss, Ex. B.) On August 22, 1991, Jonathan having returned to North Carolina with his mother, the North Carolina court issued a temporary order that Jonathan remain in that state pending a final determination of jurisdictional issues. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.)

In December, 1991, the Virginia and North Carolina courts reached conflicting custody determinations. The Virginia court ordered that plaintiff should have custody of Jonathan.[2] (Pl.'s Compl. ¶ 6; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) The North Carolina court granted custody to defen-

---

**1.** The parties might dispute how long Jonathan was to stay with his father. Defendant states that the parties agreed that Jonathan would live "temporarily" with plaintiff. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.) Plaintiff does not directly characterize the foreseen duration of the living arrangement. (Pl.'s Compl. ¶ 5.) His

submissions, however, suggest a circumscribed time span. (Pl.'s Mem. in Opp. to Mot. to Dismiss, Ex. A.)

**2.** Plaintiff states that a copy of a December 4, 1991, Chesapeake, Virginia Family Court order

dant.[3] (Pl.'s Compl. ¶¶ 8 and 9; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2–3.)

Jonathan remains in North Carolina with his mother. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 2–3.)

## II. Subject Matter Jurisdiction

A. Plaintiff's asserted bases for subject matter jurisdiction: 28 U.S.C. §§ 1331 and 1738A

■■■ Plaintiff alleges that 28 U.S.C. § 1331 and the PKPA, 28 U.S.C. § 1738A, provide the court with jurisdiction over the subject matter of this action. (Pl.'s Compl. ¶ 1.) Civil actions arising under the Constitution, laws, or treaties of the United States fall within the federal district court's original jurisdiction under 28 U.S.C. § 1331.[4] The PKPA, in turn, provides that once a state court exercises jurisdiction in accordance with the PKPA, "no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), ... and all States must accord full faith and credit to the first State's ensuing custody decree," *Thompson v. Thompson*, 484 U.S. 174, 177, 108 S.Ct. 513, 515, 98 L.Ed.2d 512 (1988), unless the first state loses jurisdiction or declines to exercise continuing jurisdiction, *id.* at 177 n. 2, 108 S.Ct. at 515 n. 2 (citing 28 U.S.C. § 1738A(f)).[5]

B. Actions "arising under" federal law

■■■ Congress has not granted to federal courts all of the "federal question" subject matter jurisdiction that it could grant under the Constitution. The statutory grant of jurisdiction is narrower than the constitutionally permissible jurisdictional allowance. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807, 106 S.Ct. 3229, 3231, 98 L.Ed.2d 650 (1986). The courts' constitutional federal question jurisdiction extends "to all cases in which a federal question is 'an ingredient' of the action." *Id.* (quoting *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824)). For purposes of 28 U.S.C. § 1331, however, district courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983).

The Supreme Court has counseled caution regarding federal question cases of the second kind, those wherein "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 28, 103 S.Ct. at 2856; *see Merrell Dow*, 478 U.S. at 808–09, 106 S.Ct. at 3232. The Court has "reiterated th[e] need for prudence and restraint," *Merrell Dow* at 810, 106 S.Ct. at 3233, "[i]n undertaking th[e] inquiry into whether jurisdiction may lie for the presence of a federal issue in a nonfederal cause of action," *id. Merrell Dow* underscores the need to tread softly; the Court therein concluded that section 1331 does not provide federal question jurisdiction over an action

is attached to his complaint. (Pl.'s Compl. ¶ 6.) No such copy accompanies the complaint.

3. It might be more accurate to state that the North Carolina court reaffirmed defendant's custody of Jonathan, since it originally granted defendant custody in July, 1981. *See supra* at 2; Pl.'s Compl. ¶ 4; Def.'s Mem. in Supp. of Mot. to Dismiss, at 2.

4. Plaintiff does not contend that 28 U.S.C. § 1332 provides the court with jurisdiction over the subject matter of this action. If he did, he would profit nothing. Domestic relations matters, including child custody disputes, pose an established exception to the court's diversity jurisdiction. *Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir.), *cert. denied*, 459 U.S. 1014, 103 S.Ct. 372, 74 L.Ed.2d 507 (1982).

5. The parties' submissions indicate that the North Carolina court was the first to exercise jurisdiction over the matter of Jonathan's custody, in 1981, when defendant received custody of her son upon her divorce from plaintiff. *See supra* at 174 and note 3. It does not appear that the North Carolina court has declined to exercise continuing jurisdiction over the custody matter; in fact, if anything, the opposite seems true. This court infers, then, that plaintiff's theory is that the North Carolina court lost jurisdiction over the matter, and that the Virginia court thereafter lawfully assumed jurisdiction. Further, this court notes that nowhere on the present record does there appear any allegation that either the North Carolina or Virginia court complied, or failed to comply, with the PKPA.

simply because the "complaint alleg[es] a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation...." *Id.* at 817, 106 S.Ct. at 3237.

■ Moreover, where a plaintiff seeks declaratory relief under 28 U.S.C. § 2201, as in this case, the court cannot assert its jurisdiction over the subject matter "merely because ... [the complaint's] artful pleading anticipates a defense based on federal law...." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950). "*Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2850 (quoting 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2767 (1983)).

In summary, *Merrell Dow* and *Skelly Oil* address particular situations where federal jurisdiction is lacking because plaintiff's right to relief does *not* necessarily depend on resolution of a substantial question of federal law. Cases in the *Merrell Dow* and *Skelly Oil* molds, then, do not pass the second jurisdictional criterion of *Franchise Tax Board*, 463 U.S. at 27–28, 103 S.Ct. at 2855–56.

### III. Analysis

A. No federal cause of action

■ Federal law does not create plaintiff's cause of action. The Supreme Court has held that the PKPA creates no private federal cause of action. *Thompson*, 484 U.S. at 187, 108 S.Ct. at 520. Thus, plaintiff fails to cross the first jurisdictional threshold of

6. *See Meade v. Meade,* 812 F.2d 1473, 1479 (4th Cir.1987) (Boyle, J., concurring) (the concurring opinion questioned the majority's conclusion that the PKPA conferred federal question jurisdiction). However, this majority conclusion in *Meade* effectively has been overruled by the Supreme Court's decision in *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). *See infra* note 13.

7. A well-pleaded complaint is the pleading "that would have been presented in a traditional ...

*Franchise Tax Board,* 463 U.S. at 27–28, 103 S.Ct. at 2855–56.

B. Plaintiff's right to relief does not depend necessarily on the resolution of a substantial question of federal law

■ Plaintiff's right to relief arises under state law, not federal law,[6] and a well-pleaded complaint[7] for the relief that plaintiff seeks does not establish that his state law "right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. at 2856.

In essence, plaintiff seeks to enforce in North Carolina the December, 1991, Virginia court order granting him custody of Jonathan. He has chosen to pursue this objective via a declaratory judgment action in federal court in Virginia. A traditional coercive action, however, would take the form of a state court suit in North Carolina on plaintiff's foreign custody judgment. In such an action, to obtain the relief he seeks, namely, the enforcement of another state's custody order, plaintiff would file "[a]n exemplified copy of [his Virginia] custody decree ... in the office of the clerk of any superior court of" North Carolina, N.C.Gen.Stat. § 50A–15(a) (Michie 1992), and initiate North Carolina state court proceedings for the enforcement thereof. North Carolina law provides that "[a] custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a [North Carolina] court...." *Id.*[8] As in *Thompson,* 484 U.S. at 178, 108 S.Ct. at 515, plaintiff here has sought declaratory relief in federal court before even attempting to enforce his custody order in state court.[9]

coercive action...." *McDougald v. Jenson,* 786 F.2d 1465, 1476 (11th Cir.1986) (quoting 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2767 (1983)).

8. In North Carolina, a custody order "is enforceable by proceedings for civil contempt...." N.C.Gen.Stat. § 50–13.3 (Michie 1992).

9. *See infra* note 13.

176

■ The PKPA preempts state law to the extent that only those foreign custody decrees "made consistently with the provisions of [the PKPA]," 28 U.S.C. § 1738A, shall have the same effect and enforceability as domestic custody determinations. *Meade v. Meade*, 812 F.2d 1473, 1479 (4th Cir.1987) (Boyle, J. concurring); [10] *see Thompson*, 484 U.S. at 180, 108 S.Ct. at 516. A well-pleaded complaint, however, for the relief that plaintiff really seeks, enforcement in North Carolina of a foreign custody determination, need not include any allegation that the Virginia state court, which issued the decree on which plaintiff relies, exercised jurisdiction consistently with the PKPA. *See Williams v. North Carolina*, 325 U.S. 226, 233–34, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577 (1945) (The determination of jurisdiction by a court of another state "is entitled to respect, and more. The burden of undermining the verity which [a foreign judgment] import[s] rests heavily upon the assailant."). In a suit on plaintiff's foreign custody order, then, a verified copy of the Virginia decree would be filed in North Carolina, and its validity would be presumed. *See id.* Plaintiff would not have to plead the validity of the decree under the PKPA or the jurisdiction of the court that issued it. *See id.* Thus, a well-pleaded complaint for the relief that plaintiff seeks does not establish that his "right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. at 2856. A well-pleaded complaint stating plaintiff's cause of action in fact does not even involve federal law. Plaintiff's cause of action is based on a North Carolina statute.

■ If this case were in the garb of a traditional suit to enforce a foreign judgment, PKPA issues would arise, if at all, only

in connection with defendant's opposition to the relief sought by plaintiff.[11] *Skelly Oil* prevents the court from asserting jurisdiction in this situation. 339 U.S. at 673, 70 S.Ct. at 880; *see Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. at 2849. Plaintiff's anticipation of a PKPA defense to a suit on his foreign judgment and artful pleading of his declaratory relief action cannot broaden the scope of section 1331.

■ Further, to the extent that plaintiff might allege (unnecessarily),[12] in a complaint filed under North Carolina law for the enforcement of his foreign custody order, that the Virginia court acted properly under the PKPA in issuing its custody order and that the North Carolina court violated the PKPA by issuing its latest, conflicting custody order, *Thompson* and *Merrell Dow* in conjunction bar the court from exercising jurisdiction over this action. *Thompson* establishes that the PKPA affords no private, federal cause of action. 484 U.S. at 187, 108 S.Ct. at 520. Congress having withheld a private cause of action, *Merrell Dow* dictates that the court cannot assume statutory federal question jurisdiction over this case. 478 U.S. at 817, 106 S.Ct. at 3236. The exercise of such jurisdiction would rest on the complaint's allegation of a PKPA violation as an element of the state cause of action. The Supreme Court has held that to assert such jurisdiction is to overstep the bounds of section 1331. "[T]he congressional determination that there should be no federal remedy for the violation of [the PKPA] is tantamount to a congressional conclusion that the presence of a claimed violation of the [PKPA] as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814, 106 S.Ct. at 3235.[13]

**10.** *See supra* note 6.

**11.** That is, if plaintiff were to seek coercive rather than declaratory relief, his complaint, in order to state a cause of action, need not include allegations (1) that the Virginia court exercised jurisdiction consistently with the PKPA, (2) that the North Carolina court violated the PKPA by entering its conflicting decree, or (3) that the Virginia court's order is entitled to full faith and credit under the PKPA. Defendant, however, might invoke the PKPA to defend against the relief

sought. For example, she could assert, and would bear the burden of proving, the impropriety under the PKPA of the Virginia court's assumption of jurisdiction over Jonathan's case, and the attendant invalidity of its custody order. *See supra* at 175.

**12.** *See supra* at 175 and note 11.

**13.** As in the case *sub judice*, in *Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986), the plaintiff/appellant/father sought declaratory relief

 Finally, this court recognizes that the state law action to enforce plaintiff's foreign custody decree *could present* a full faith and credit issue under the PKPA. "Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations...." *Thompson,* 484 U.S. at 183, 108 S.Ct. at 518.[14] Plaintiff's right to relief ultimately could depend on a determination whether North Carolina, under the PKPA, must afford full faith and credit to the Virginia custody order.[15] That plaintiff's suit in North Carolina on a foreign judgment might present a full faith and credit issue under the PKPA, however, does not mean that plaintiff's cause of action involves, let alone necessarily depends on the outcome of, a *substantial* federal issue. Mere invocation of the Full Faith and Credit Clause "does not make a case arising under the Constitution or laws of the United States." *Minnesota v. Northern Sec. Co.,* 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904). The Full Faith and Credit Clause

only prescribes a rule by which courts ... are to be guided when a question arises ... as to the faith and credit to be given by the court to the ... judicial proceedings of a State other than that in which the court is sitting.... [T]he clause has nothing to do with the conduct of individuals....

*Id.*

Logically, then, given the Full Faith and Credit Clause origins of the PKPA, that a case requires the resolution of a PKPA issue does not mean that it involves a *substantial* federal question for purposes of jurisdiction under section 1331. *See Meade,* 812 F.2d at 1481–82 (Boyle, J., concurring) (criticizing *McDougald v. Jenson,* 786 F.2d 1465, 1480 (11th Cir.1986) and stating that there is "no way to interpret the well-pleaded complaint rule in such a way as to let PKPA cases into federal court while keeping other full faith and credit cases out.... It is hard to understand how the PKPA can ordain federal jurisdiction when the Full Faith and Credit

---

in federal court under the PKPA with respect to conflicting state child custody decrees. He filed suit in the United States District Court for the Central District of California, seeking a declaration of the validity of a California custody decree and the invalidity of a Louisiana decree. *Id.* at 1549.

The Ninth Circuit held in *Thompson* that federal question jurisdiction existed because "[t]he court must assume jurisdiction to decide whether the complaint states a cause of action on which relief can be granted," *id.* at 1550, when the cause of action is not patently meritless. The Ninth Circuit concluded that the PKPA allows for no private cause of action. *Id.* at 1559. The Supreme Court affirmed that holding. *Thompson,* 484 U.S. at 187, 108 S.Ct. at 520.

Read in the light of *Merrell Dow,* the ineluctable implication from *Thompson,* 484 U.S. 174, 108 S.Ct. 513, is that no federal question jurisdiction exists in the case at bar. That is, *Thompson* closes the first *Franchise Tax Board* jurisdictional door on PKPA cases of the instant sort, and then *Merrell Dow* simultaneously slams shut the second portal. Namely, if the PKPA creates no federal cause of action on which plaintiff can bring suit, his case then involves no substantial federal question, as the PKPA is the only federal law it implicates. *See Rogers v. Platt,* 814 F.2d 683, 689 (D.C.Cir.1987) ("*Merrell Dow mirabile dictu* converts [the Ninth Circuit's *Thompson* holding] that Congress intended no federal cause of action into a determination that there is no federal jurisdiction.").

Thus, the Fourth Circuit's holding that the PKPA creates federal question jurisdiction, *see Meade v. Meade,* 812 F.2d 1473, 1476 (4th Cir. 1987); *Hickey v. Baxter,* 800 F.2d 430, 431 (4th Cir.1986), effectively has been overruled by *Thompson.*

14. Congress identified a need "to establish national standards under which the courts of [different] jurisdictions will determine their jurisdiction to decide [custody] disputes and the effect to be given by each such jurisdiction to [custody] decisions by the courts of other such jurisdictions." Parental Kidnapping Prevention Act, Pub.L. No. 96–611, § 7(b), 94 Stat. 3566, 3569 (1980). Congress intended the PKPA, among other things, to "facilitate the enforcement of custody and visitation decrees of sister States." Parental Kidnapping Prevention Act, Pub.L. No. 96–611, § 7(c)(3), 94 Stat. 3566, 3569 (1980). As all fifty states now have adopted the Uniform Child Custody Jurisdiction Act ("UCCJA"), the need for uniformity addressed by the PKPA has been eroded.

15. *See supra* at 175 and note 11. Even absent a PKPA or Full Faith and Credit Clause defense, the North Carolina court could conduct its own *sua sponte* inquiry into whether plaintiff's Virginia judgment would be entitled to enforcement. *See Williams v. North Carolina,* 325 U.S. at 234, 65 S.Ct. at 1097 (one state's jurisdictional determination "cannot ... foreclose reexamination by another state").

Clause does not"); [16] *Rogers v. Platt,* 814 F.2d 683, 692 (D.C.Cir.1987) ("Nothing in the language of section 1738A implies a departure from the traditional jurisdictional treatment of the full faith and credit clause....").

For the foregoing reasons, this court concludes that plaintiff's case does not meet the second *Franchise Tax Board* jurisdictional criterion. A well-pleaded complaint fails to establish that plaintiff's case even involves federal law, let alone that his right to relief depends necessarily on the resolution of a substantial federal law issue. That federal law, namely the PKPA, could be implicated by way of defense to plaintiff's state law cause of action or by the resolution of a full faith and credit issue does not create federal question jurisdiction. Although the court concludes that no federal question jurisdiction exists here under 28 U.S.C. §§ 1331 and 1738A, the court notes that "ultimate review remains available in [the Supreme] Court for truly intractable jurisdictional deadlocks" between the states. *Thompson,* 484 U.S. at 187, 108 S.Ct. at 520.

### IV. Conclusion

For the reasons stated herein, the court concludes that it has no jurisdiction over the subject matter of the present action. Plaintiff's case passes through neither of the jurisdictional gateways demarcated in *Franchise Tax Board.* 463 U.S. at 27–28, 103 S.Ct. at 2855–56. The court accordingly GRANTS defendant's motion to dismiss for lack of subject matter jurisdiction and ORDERS this action DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3).[17]

It is so ORDERED.

---

16. *See supra* note 6.

17. The court's decision to grant defendant's 12(b)(1) motion to dismiss moots defendant's 12(b)(6) motion to dismiss, as well as plaintiff's motions to strike and for default judgment. Absent subject matter jurisdiction under the PKPA, plaintiff cannot state a claim for which relief can be granted. *See Thompson,* 484 U.S. at 187, 108 S.Ct. at 520; *supra* note 13. Moreover, even assuming that defendant filed a late motion to dismiss, under Federal Rule of Civil Procedure 12(h)(3), the court must dismiss plaintiff's action *"whenever it appears by suggestion of the parties or otherwise* that the court lacks jurisdiction of the subject matter...." (emphasis added).