Patrick D. CAHILL, individually and on behalf of the minor Patrick D. Cahill as next friend, Plaintiffs,

v.

Hon. Robert G. KENDALL, Hon. Donald R. Moran, Jr., and Hon. J. Bradford Stetson, Defendants.

Civil Action No. 02–0253–CGL.

United States District Court, S.D. Alabama, Southern Division.

April 26, 2002.

Patrick D. Cahill, Saraland, AL, pro se.

George Lee Waas, Assistant Attorney General, Office of the Attorney General of Florida, Tallahassee, FL, for defendants.

## MEMORANDUM OPINION AND ORDER

GRANADE, District Judge.

This cause is before the court on a *sua sponte* review of plaintiff's verified complaint and petition for emergency injunction (Doc. 1). Upon consideration of all matters presented and for the reasons stated herein, this case is due to be dismissed for lack of jurisdiction.

## BACKGROUND

This is the *pro se* plaintiff's third case filed in this District Court in the last nine months stemming from his ongoing child custody dispute with his ex-wife, Deborah J. Cahill. In *Cahill v. Schemer*, S.D.Ala. Civil Action No. 01–0528–P–L, the plaintiff sued the Honorable Jack M. Schemer, Judge of the Fourth Circuit Court of Duval County, who had entered custody orders concerning plaintiff's son. Senior Judge Virgil Pittman dismissed the case for lack of jurisdiction on November 15, 2001. (01–0528–P–L, Doc. 25.) In *Cahill v. Cahill*, S.D.Ala. Civil Action No. 01–

0805–CG–M, plaintiff sued his ex-wife alleging a constitutional and federal law deprivation concerning child custody and also alleging a state-law tort of outrage. The undersigned dismissed the federal claims for lack of subject matter jurisdiction on March 7, 2002. (01–0805–CG–M, Doc. 12.) The present civil action commenced on April 16, 2002. Plaintiff has filed suit, *pro se* and purportedly on behalf of his minor son, who is in his custody. Plaintiff has named as defendants the Honorable Robert G. Kendall, Presiding Judge of the Circuit Court of Mobile County, the Honorable Donald R. Moran, Jr., Chief Judge of the Fourth Circuit Court of Duval County, Florida, and the Honorable J. Bradford Stetson, Family Court Judge of the Fourth Circuit Court of Duval County, Florida (Doc. 1). Plaintiff's claims are somewhat vague. He alleges federal question jurisdiction based on 28 U.S.C. § 1331 and cites as the basis therefor 28 U.S.C. § 1738A(f), 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment. Plaintiff states that the Honorable Ferrill D. McRae, Judge of the Circuit Court of Mobile County, issued a "protection from abuse and change of custody order" on behalf of Patrick C. Cahill on March 26, 2002. Judge McRae has set a hearing date of April 29, 2002.[1] (Doc. 1, ¶ 9.) Meanwhile, in an order dated April 12, 2002, Florida Judge J. Bradford Stetson ordered the plaintiff to return his minor son to his mother. Plaintiff alleges that Judge Stetson ordered him incarcerated, and that the Florida court's orders were due to Judge Stetson's "personal bias" against the plaintiff. He also states that "Conflicting laws and orders now exist between two states that can only be resolved in Federal Court" (Doc. 1).

---

1. Curiously, plaintiff has sued the presiding judge of the Mobile County Circuit Court, Robert G. Kendall. However, the plaintiff has not named Judge McRae as a defendant in this action.

Plaintiff's first cause of action cites two provisions of the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A(f)(2) and (h) and alleges that the Florida court has "relinquished jurisdiction" by failing to act on plaintiff's motions for more than a year. Plaintiff recounts a series of alleged visitation deprivations which he states that the Florida court failed to address after custody was awarded to his ex-wife in 1997. Mr. Cahill alleges that the Florida court "launched a personal attack" against him. He concludes,

18. The Fourth Circuit Court of Duval County has failed to exercise jurisdiction over the enforcement or modification of the custody decree entered in October 1997, and reaffirmed in December 2000, for a period of 16 months. Numerous pleadings have been filed and have been ignored. The only issues that the Fourth Circuit Court has exercised jurisdiction over have been orders for the incarceration of plaintiff Patrick D. Cahill, not issues concerning the best interests of the minor child, plaintiff Patrick C. Cahill, or issues concerned with custody, support, or visitation. The Fourth Circuit Court has declined to exercise jurisdiction over the issues of enforcement and modification of the original custody decree by ignoring all pleadings from plaintiff Patrick D. Cahill seeking enforcement of the orders and protection of his and his son's rights.

19. In the context of U.S.C. Title 28, § 1738A(f)(2), the Fourth Circuit Court of Duval County, Florida has declined to exercise jurisdiction in this case.

(Doc. 1.) In claim two, the plaintiff cites provisions of the Florida Code of Judicial Conduct and various portions of the Florida Statutes concerning child custody. He concludes,

24. The plaintiffs were denied virtually all contact with each other for a period of over 16 months, and the Fourth Circuit Court of Duval County, specifically Judge J. Bradford Stetson, had full knowledge that the law and the court orders were being violated. He was personally copied on every filing into the court case file. He chose to do nothing, thus declining to exercise jurisdiction over this case, and violating the plaintiff's 14th Amendment rights to due process and fair and equal treatment in a court of law.

25. The Fourth Circuit Court of Duval County, Florida refused to enter an order for child support for plaintiff Patrick C. Cahill during the 20 months that he was in the custody of his father, plaintiff Patrick D. Cahill. Immediately on entering an order returning plaintiff Patrick C. Cahill to his mother, the Florida Fourth Circuit Court entered an order requiring plaintiff Patrick D. Cahill to pay support plus arrearage accrued while he had custody. This is a clear indication that the Florida court is more interested in the federal matching child support funds than in the constitutional rights of the plaintiffs.

(Doc. 1.) Claim three is recounted in its entirety:

26. Florida and Alabama have two different statutory laws regarding the issues of child custody and visitation across state lines. Alabama has the more progressive [Uniform Child Custody Jurisdiction and Enforcement Act] which allows Alabama to retain jurisdiction under the current protection from abuse order, and has specific guidelines

for time frames and decisions on jurisdictional issues. Florida still adheres to the UCCJA and has no laws that deal with an interstate protection from abuse order. The inconsistency between the two states' laws requires the intervention of federal authority to interpret the true and actual meaning of the overriding federal statute, U.S.C. Title 28 Section 1738(A)(f)(2).

(Doc. 1.) Based on these allegations, plaintiff seeks the following:

1. Plaintiff seeks a ruling from the Federal District Court providing clear guidance on the definition of "decline to exercise jurisdiction" in U.S.C. Title 28, Section 1738A(f)(2). Such guidance should define the failure by a court in the State of original jurisdiction to enforce orders in a child custody case, uphold the laws of that State with regards to visitation and other issues, or acknowledge and schedule for hearing pleadings seeking such enforcement as, by default, to be declining to exercise jurisdiction (as defined by U.S.C. Title 28 Section 1738A(f)(2)) over any case in which a plaintiff seeks the judicial authority of his home state to effect such enforcement or modification in order to protect his rights as a parent in his child's right to have a father (or mother, if applicable).

2. Entry of an emergency injunction preventing the state circuit judges of Florida and Alabama from conducting ex-parte communications to decide between themselves where jurisdiction properly lies. If such an injunction is not entered, the plain-

tiff's rights to due process and fair hearings will be violated. *Id.*

## DISCUSSION

The plaintiff's complaint alleges federal question jurisdiction primarily on the basis of a provision of Parental Kidnaping Prevention Act of 1980, Pub.L. 96–611, Dec. 28, 1980, 94 Stat. 3568, which is codified as 28 U.S.C. § 1738A. As explained herein, plaintiff's first and third causes of actions ("Claim One" and "Claim Three") are due to be dismissed for lack of subject matter jurisdiction. Likewise, plaintiff's second cause of action is in the nature of an appeal or petition for writ of mandamus against the Florida court for its orders in the child custody dispute in which plaintiff is embroiled; "Claim Two" is also due to be dismissed for lack of subject matter jurisdiction.

### I. Subject Matter Jurisdiction

The jurisdiction conferred upon federal courts by Article III, section 2 of the Constitution is codified in part in Title 28, section 1331 of the United States Code. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This provision reflects the firmly established principle that federal courts are courts of limited jurisdiction:

Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir.1999). While Article III of the Constitution sets the outer boundaries of that power, it also vests Congress with the discretion to determine whether, and to what extent, that power may be exercised by lower

federal courts. *See Palmore v. United States*, 411 U.S. 389, 400–01, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973). Consequently, lower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction, and once a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction. *See University of South Alabama*, 168 F.3d at 409–10.

... Subject matter jurisdiction is conferred and defined by statute. It cannot be created by the consent of the parties, *see Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985) (per curiam), nor supplanted by considerations of convenience and efficiency, *see, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir.1998) (raising *sua sponte*, after sixteen years of federal court litigation, the issue of whether diversity jurisdiction existed). Thus, a federal court must inquire *sua sponte* into the issue whenever it appears that jurisdiction may be lacking. *See Fitzgerald*, 760 F.2d at 1251 ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").

*Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir.2000). Moreover, A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction regardless of the stage of the proceedings, and facts outside the pleadings may be considered as part of that determination. *See, e.g.,*

*Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.") *Goodman v. Sipos*, 259 F.3d 1327, 1331 n. 6 (11th Cir.2001). The court turns to the alleged bases on which plaintiff asserts § 1331 federal question jurisdiction.

**A. Claim One and Claim Three: 28 U.S.C. § 1738A.**

Plaintiff's first and third claims are clearly and solely based upon 28 U.S.C. § 1738A, the Parental Kidnaping Prevention Act of 1980. In the first cause of action, plaintiff claims that the Florida state court that has issued custody orders concerning his child has "declined to exercise jurisdiction over the issues of enforcement of visitation or modification of custody, as defined in U.S.C. Title 28, § 1738A(f)(2) and § 1738A(h), for the past 16 months prior to the filing of this petition." (Doc. 1, ¶ 12.)[2] In the third claim, petitioner cites alleged discrepancies between the Alabama Uniform Child Custody Jurisdiction and Enforcement Act (UCJEA), ALA.CODE § 30–3B–101 *et seq.*, and the Florida Uniform Child Custody Jurisdiction Act (UCCJA) FL.ST. § 61.1314, and argues that "the inconsistency between the two states' laws requires the intervention of federal authority to interpret the true and actual meaning of the overriding fed-

---

2. The statutes provides, "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—... (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination". 28 U.S.C. § 1738A(f)(2). Additionally, "A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination." 28 U.S.C. § 1738A(h).

eral statute, U.S.C. Title 28 Section 1738A(f)(2)." (Doc. 1).

Simply put, no provision of § 1738A can serve as a basis for federal jurisdiction because § 1738A confers no federal cause of action. In *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the Supreme Court confronted the issue of "whether the Parental Kidnaping Prevention Act of 1980 ... furnishes an implied cause of action in federal court to determine which of two conflicting custody decisions is valid." *Thompson*, at 176, 108 S.Ct. 513. The facts of *Thompson* are somewhat similar to this case. After divorce and custody orders were entered in the state of California, Susan Clay moved to Louisiana. Conflicting custody orders were thereafter entered by the California and Louisiana courts, and David Thompson filed suit in federal court in California seeking an order declaring the Louisiana custody order invalid and the California order valid. The complaint was dismissed for lack of subject matter jurisdiction, and the Court of Appeals and Supreme Court affirmed. The Court reviewed the legislative history of § 1738A in detail, noting that it was passed pursuant to the Full Faith and Credit Clause, U.S. Const., Art. IV, cl. 1, to combat parental kidnaping motivated by child custody "forum shopping"—a parent abducting his own child to relitigate custody issues in another state after they had been adversely decided in the first state. The Court stated,

> The significance of Congress' full faith and credit approach to the problem of child snatching is that the Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action. *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904); see 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3563, p. 50 (1984). Rather, the Clause "only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a State other than that in which the court is sitting." *Northern Securities, supra*, at 72, 24 S.Ct. at 605. Because Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations, *the Act is most naturally construed to furnish a rule of decision for courts to use in adjudicating custody disputes and not to create an entirely new cause of action. It thus is not compatible with the purpose and context of the legislative scheme to infer a private cause of action. See Cort v. Ash*, 422 U.S., at 78, 95 S.Ct., at 2088. The language and placement of the statute reinforce this conclusion. The PKPA, 28 U.S.C. § 1738A, is an addendum to the full faith and credit statute, 28 U.S.C. § 1738. This fact alone is strong proof that the Act is intended to have the same operative effect as the full faith and credit statute. Similarly instructive is the heading to the PKPA: "Full faith and credit given to child custody determinations." As for the language of the Act, it is addressed entirely to States and state courts. Unlike statutes that explicitly confer a right on a specified class of persons, the PKPA is a mandate directed to state courts to respect the custody decrees of sister States. *See Cannon v. University of Chicago*, 441 U.S., at 690, n. 13, 99 S.Ct., at 1954, n. 13; *Cort v. Ash, supra*, 422 U.S., at 81–82, 95 S.Ct., at 2089–2090. We agree with the Court of Appeals that "[i]t seems highly unlikely Congress would follow the pattern of the Full Faith and Credit Clause and section 1738 by structuring section 1738A as a command to

state courts to give full faith and credit to the child custody decrees of other states, and yet, without comment, depart from the enforcement practice followed under the Clause and section 1738." 798 F.2d, at 1556.

*Thompson,* 484 U.S. at 182–83, 108 S.Ct. 513 (emphasis supplied). The court continued,

> Instructing the federal courts to play Solomon when two state courts have issued conflicting custody orders would entangle them in traditional state-law questions that they have little expertise to resolve. This is a cost that Congress made clear it did not want the PKPA to carry. In sum, the context language, and history of the PKPA together make out a conclusive case against inferring a cause of action in federal court to determine which of two conflicting decrees is valid.... [W]e "will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

*Id.,* at 186–187, 108 S.Ct. 513.[3] Since *Thompson* was handed down, numerous courts have dismissed suits similar to plaintiff's for lack of subject matter jurisdiction. *See Becker v. State of California,* 17 F.3d 393, (Table) and 1994 WL 41073 *1 (9th Cir.1994) ("Nor does [appellant's] citation of the Parental Kidnaping Prevention Act provide a cognizable claim, as it has been found not to create a private right of action in federal court."); *Nwankwo v. Nwankwo,* 993 F.2d 1530 (Table) and 1992 WL 474105, *1 (1st Cir.1992) ("As the district court held, there was no basis for original subject matter jurisdiction over the PKPA claim under 28 U.S.C. § 1331,

because the PKPA does not provide an implied private federal cause of action to determine which of two conflicting state custody decrees is valid.... If plaintiff felt aggrieved by the Florida orders, his remedy was to appeal through the state courts."); *Canipe v. Canipe,* 918 F.2d 955 (Table) and 1990 WL 180118 (4th Cir.1990) ("[T]he Full Faith and Credit Clause of the United States Constitution and it statutory counterparts do not give rise to implied federal causes of action."); *Rogers v. Platt,* 814 F.2d 683, 691 (D.C.Cir.1987) ("Congress, it appears to us, intended to enact only a rule of decision for state courts, since like both the statutory § 1738 and constitutional full faith and credit provisions, § 1738A, the addendum, is a rule of decision that has nothing to do with the conduct of individuals and as such does not create federal question jurisdiction.... [W]e agree with the majority in *Thompson* that enforcing the PKPA would ineluctably enmesh federal courts in domestic relations matters."); *Esser v. Roach,* 829 F.Supp. 171, 176 (E.D. Va.1993) ("The exercise of [federal] jurisdiction would rest on the complaint's allegation of a PKPA violation as an element of the state cause of action. The Supreme Court has held that to assert such jurisdiction is to overstep the bounds of § 1331."); *LaMaina v. Brannon,* 804 F.Supp. 607, 612 (D.N.J. 1992) ("Pursuant to the Supreme Court's unmistakably clear language in *Thompson,* this court has no authority upon which to issue the declaratory judgment [plaintiff] seeks. The PKPA does not provide a private right of action in the federal courts, and therefore provides no support for defendant's arguments.); *Hays v. Hays,* 789 F.Supp. 378, 380 (M.D.Fla.1992) ("[T]his court does not have jurisdiction to consider

---

**3.** *Thompson* implicitly overruled the earlier Eleventh Circuit case of *McDougald v. Jenson,* 786 F.2d 1465, 1475 (11th Cir.1986) ("[W]e ... hold that an action seeking an authorita-

tive federal construction of section 1738A to resolve a conflict concerning the validity of conflicting state court custody orders may be maintained in federal district court.")

this [Alabama–Florida conflicting custody order] case under the PKPA.). The court also notes that the references to the Alabama Uniform Child Custody Judgment Enforcement Act and the Florida Uniform Child Custody Jurisdiction Act do not confer federal jurisdiction. *See Becker, supra,* 1994 WL 41073 at *1 ("The UCCJA does not create any federal right of action as it is a state procedural act.")

Based on the above, claims one and three are due to be dismissed for lack of subject matter jurisdiction.

## B. Claim Two: § 1738A, Florida Law, and the Fourteenth Amendment

It is difficult to discern the exact basis of federal jurisdiction in plaintiff's second claim. The claim, paragraphs 20–25 of the complaint, continually states that the Florida court has declined to exercise jurisdiction—a clear reference to 28 U.S.C. § 1738A(f)(2). To that extent, claim two is due to be dismissed for lack of jurisdiction under *Thompson. See supra.*

██ To the extent that claim two arises from the decisions in plaintiff's custody battle rendered in the Florida or Alabama courts, the *Rooker–Feldman* doctrine bars review.[4] In reaching this conclusion, the court notes with approval the rational of the Northern District of Illinois in *Polonczyk v. Polonczyk,* 2002 WL 10468 (N.D.Ill. 2002), a factually similar case. In *Polonczyk,* the plaintiff ex-husband "tendered a self-prepared complaint charging a massive conspiracy ... stemming from a long-standing and bitter marital dispute with his ex-wife." *Id.,* at *1. The court dismissed the case on jurisdictional grounds.

Because Polonczyk views the state court as "biased" and "vengeful," he asks this Court to grant an emergency hearing to vacate judgments of that court ordering him to pay child support and attorneys' fees. But because Polonczyk's asserted grievances in those respects unquestionably stem from judgments rendered by the Illinois state court system, the *Rooker–Feldman* doctrine (*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)) prohibits the review of such state court decisions by a federal district court, in principal part because 28 U.S.C. § 1257 gives the United States Supreme Court the sole federal jurisdiction to review state court judgments.

To the extent that Polonczyk asks this Court "to grant emergency visitation of the minor child" (and indeed as to his entire attack on the proceedings in his marital dispute), he also runs afoul of the long-standing judicially created exception that keeps federal courts out of the area of disputes involving the relationships between husband and wife and parent and child (see the extended discussion in 13B Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3609 (2d ed.1984 and 2001 pocket part)). Indeed, it is noteworthy that the congressional concerns about conflicting rulings in child custody and child support cases because the parents can reside in different states has led Congress to enact 28 U.S.C. §§ 1738A and 1738B, which set detailed rules for the state court systems (a specialized application of the principles underpinning the Full

---

4. Plaintiff is familiar with the *Rooker–Feldman* doctrine, that served as the basis for the dismissal of plaintiff's prior case against the Honorable Jack M. Schemer, Judge of the Fourth Circuit Court in *Cahill v. Schemer,* S.D.Ala. Civil Action No. 01–0528–P–L. Plaintiff's federally-styled claims against his ex-wife were also dismissed based on the *Rooker–Feldman* doctrine in *Cahill v. Cahill,* S.D.Ala. Civil Action No. 01–0805.

Faith and Credit Clause and its implementation in 28 U.S.C. § 1738) —with nary a whisper as to any federal court jurisdiction.

In summary, from whatever perspective or direction Polonczyk's attempt to state his claims may be approached, this Court lacks subject matter jurisdiction. And that being so, it sua sponte dismisses both the Complaint and this action.*

*NOTE 4: It would have been possible to dispatch many of the defendants on grounds separately applicable to them—for example . . . the judicial defendants on grounds of absolute immunity, and so on. But any such individualized consideration would only have lengthened this opinion unduly, given the fundamental jurisdictional flaws that doom the entire lawsuit.

*Id.*, at *1–2.

To the extent plaintiff seeks review of the state court divorce decrees, as in *Polonczyk*, the *Rooker–Feldman* doctrine and the domestic relations exception to federal jurisdiction first announced in *Barber v. Barber*, 62 U.S (21 How.) 582, 16 L.Ed. 226 (1859) and affirmed in *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) deprive this court of subject matter jurisdiction. The plaintiff has also cited several provisions of Florida law which he argues that the Florida courts are flaunting. Plaintiff's claim two is thus somewhat akin to a *mandamus* action. However, federal courts "have no authority to issue such a writ to 'direct state courts or their judicial officers in the performance of their duties.'" *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir.1986); *see Russell v. Knight*, 488 F.2d 96, 97 (5th Cir.1973). "Mandamus is an extraordinary remedy that lies only to confine a lower court within its jurisdiction or to compel it to perform ministerial, not discretionary, functions." *Weber v. Coney*, 642 F.2d 91, 92 (5th Cir.1981). Thus, to the extent plaintiff seeks mandamus relief, his action is not cognizable in federal court. Finally, plaintiff's singular reference to the Fourteenth Amendment— "[Judge Stetson] chose to do nothing, thus declining to exercise jurisdiction over this case, and violating the plaintiff's 14th Amendment rights to due process and fair and equal treatment in a court of law"— does nothing to overcome the fatal jurisdictional flaws in claim two already delineated.[5] In short, plaintiff's second claim is due to be dismissed due to lack of subject matter jurisdiction.

## C. 42 U.S.C. § 1988

As a final matter, plaintiff states that "this action is brought pursuant to . . . U.S.C. Title 42, § 1988." (Doc. 1, at ¶ 3.) Section 1988, an attorney's fee provision, does not confer jurisdiction in this case. *See McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388, n. 1 (11th Cir.1981) ("Section 1988 does not create an independent cause of action for deprivation of constitutional rights.") Moreover, as a matter of law, a *pro se* plaintiff cannot recover attorney's fees under § 1988. *See Cofield v. City of Atlanta*, 648 F.2d 986, 987 (5th Cir., Unit B, 1981).

## CONCLUSION

For the reasons stated, this court lacks subject matter jurisdiction in this case.

---

**5.** The plaintiff also alleges jurisdiction is based in part on 42 U.S.C. § 1983. There is no further reference to this statutory provision in plaintiff's complaint, and the court will not engage in a separate analysis. The court will merely note that, jurisdictional flaws aside, state judges enjoy absolute immunity in § 1983 suits when acting in their official capacity and not "in a clear absence of all jurisdiction". *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

Consequently, the court is powerless to entertain the plaintiff's motion for "entry of an emergency injunction." (Doc. 1.) It is **ORDERED, ADJUDGED, and DE-CREED** that this case be, and it hereby is **DISMISSED WITH PREJUDICE,** pursuant to FED.R.CIV.P. 12(b)(1).

The Clerk of Court is directed to fax this order to the parties, and to the Honorable Ferrill D. McRae, Judge of the Circuit Court of Mobile County.